UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FILED
WESTERN DISTRICT CLERK

17 APR -6 AM II: 40

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Ex rel.* ABC, | ) | |
|           Plaintiff, | ) | |
| | ) | **CASE NO.** 3:17-cv-209-DJH |
| V. | ) | |
| | ) | |
| DEF, | ) | |
|           Defendants. | ) | **Jury Trial Demanded** |
| | ) | **Filed Under Seal** |
| | ) | 31 U.S.C. § 3730(b)(2) |
| | ) | |

**COMPLAINT**
**Claims Pursuant to the False Claims Act, 31 USC § 3729, *et seq.***

**[FILED IN CAMERA AND UNDER SEAL]**

FILED

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY '17 APR -6 AM II: 40
AT LOUISVILLE
**FILED UNDER SEAL**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* TRAVIS WHITED, Plaintiff, | ) ) ) ) ) | |
| V. | ) ) | **CASE NO.** 3:17-cv-209-DJH |
| CONIFER HEALTH SOLUTIONS, LLC, Defendant. | ) ) ) | |
| And | ) ) | **Jury Trial Demanded** |
| TENET HEALTHCARE CORPORATION, Defendant. | ) ) ) | |
| | ) ) | **Filed Under Seal** 31 U.S.C. § 3730(b)(2) |

**COMPLAINT**
**Claims Pursuant to the False Claims Act, 31 USC § 3729, *et seq*.**

The United States of America, by and through *qui tam* originating relator Travis Whited ("Relator" or "Whited"), hereby brings this action pursuant to the False Claims Act ("FCA"), as amended, 31 U.S.C. § 3729, *et seq.*, by and through his attorneys, Brian H. Mahany and the Law Firm of Mahany Law, and Gregory M. Funfsinn and Walters Meadows Richardson, PLLC, hereby declare the following to recover all damages, penalties, and other remedies available as established by the FCA that were caused by Defendants' repeated and deliberate submissions of false, fraudulent and intentionally deceptive records, claims, statements and representations, used and caused to be made, used and relied upon by the United States Government under and through its Medicaid program.

As will be set forth with greater specificity below, Defendant Conifer Health Solutions ("Conifer") knowingly fraudulently enrolled noneligible, illegal aliens into the State of Kentucky's Medicaid Program despite having knowledge that these enrollees were not eligible for coverage. As a result of Conifer's actions, ineligible people were enrolled in the Kentucky Medicaid program and received coverage. Defendants submitted claims for the services that were then provided to the newly Medicaid covered individuals. Relator told his superiors their enrollment practices were fraudulent but little has been done to address Relator's concerns. Both Conifer and Tenet Healthcare Corporation ("Tenet") have been paid significant money from both the State of Kentucky and United States as a result of the ineligible enrollees that were provided Medicaid coverage when they should not have been covered.

## THE PARTIES

1.    Plaintiff is the United States of America.

2.    Plaintiff-Relator Travis Whited ("Whited") is currently a resident of Tennessee, who previously resided in Kentucky, and is a Patient Advocate at Conifer. Relator is physically located at a hospital owned by Catholic Health Initiatives although he works for Conifer. As part of his job duties, he helps to enroll individuals in insurance programs, including Medicaid. Relator worked in Kentucky until November of 2016 when he transferred to a Conifer facility in Tennessee.

3.    Conifer is a Texas limited liability company with its corporate headquarters located at 3560 Dallas Parkway, Frisco, TX 75034. Relator Whited worked for Conifer. Conifer is believed to be wholly owned by Defendant Tenet Health Corporation. Conifer is registered to transact business in Kentucky. Its registered agent is CT Corporation System, which is located at 306 West Main Street, Suite 512, Frankfort, Kentucky.

4.     Tenet Healthcare Corporation is a publicly traded entity that has its corporate offices located at 1445 Ross Avenue, Suite 1400, Dallas, Texas 75202. It owns Conifer.

5.     Each of the Defendants have benefitted from the pattern and practices stated below.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Plaintiff-Relator establishes subject matter jurisdiction under 31 U.S.C. § 3730(b).

7.     This Court has personal jurisdiction over the Defendants and is a proper venue pursuant to 28 U.S.C. § 1391 (b) and 31 U.S.C. § 3732(a). Moreover, Defendants' principal places of business are in this District.

## FEDERAL FALSE CLAIMS ACT

8.     Pursuant to 31 U.S.C.A. § 3729, "any person who--(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government." 31 U.S.C.A. § 3729.

9.     Private citizens, such as Relator, can bring actions on the government's behalf. "(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C.A. § 3730(b)(1).

10.     Under 31 U.S.C.A. § 3730 (e), there has been no statutory relevant public disclosure of the allegation or transactions in this Complaint with respect to which Plaintiff-Relator Whited is not an "original source," and all material information relevant to this Complaint was provided

to the United States Government prior to filing his Complaint pursuant to 31 U.S.C.A. § 3730(e)(4)(B).

### Medicaid and Kentucky's Presumptive Eligibility Coverage

11.    The Medicaid program was enacted in 1965 and is jointly administered and financed by the federal and state governments. The State of Kentucky's Medicaid program is operated by the Department of Medicaid Services.

12.    Medicaid is considered a "Federal health care programs." 42 U.S.C.A. § 1320a-7b.

13.    Federal law makes it a crime to submit false billings to the government for payment and requires that all submissions for payment be accurate. 18 U.S.C.A. § 1347.

14.    The Kentucky Health Benefit Exchange, which is known as kynect, is a portal by which individuals in Kentucky can obtain Medicaid coverage.

15.    Kentucky allows presumptive eligibility for individuals, commonly pregnant women, who seek to obtain Medicaid coverage.

16.    Presumptive Eligibility ("PE") is a process in Kentucky which expedites an individual's ability to receive temporary coverage for Medicaid services. When a person is enrolled as being presumptively eligible to receive Medicaid coverage, coverage begins immediately. Coverage then continues until a Medicaid application is filed and either approved or denied; or the last day of the second month after PE determination, if no Medicaid application has been filed. PE was designed so that hospitals could enroll individuals into Medicaid immediately so that individuals would have immediate access to covered services.

17.    Kynect released a Presumptive Eligibility (PE) Quick Reference Guide, which is designed to assist employees of Qualified Entities understand PE in kynect, including the benefits and features, eligibility requirements, and how to enroll citizens for PE using kynect.

18.    In order to submit an individual's PE application, the individual must first be eligible for coverage. The eligibility requirements provide that the individual must be a United States citizen or a qualified alien. Illegal immigrants are not allowed to enroll, or be enrolled, through PE. An individual is not to apply for PE if they are not qualified for coverage.

19.    Qualified Entities, such as Conifer, utilize the PE program because when an individual is enrolled through it, Medicaid guarantees the reimbursement of eligible services rendered by the Provider to the PE recipient by Medicaid. Because the coverage is immediate, services can be immediately provided and there is guaranteed reimbursement should the services be medically necessary. Thus, there is a significant financial incentive to enroll noncovered individuals through PE.

## FACTUAL BACKGROUND

20.    Relator began his employment at Conifer in December of 2012. Relator is a Patient Advocate in the Eligibility and Enrollment Services (formally "Medical Eligibility and Counseling Services).

21.    Relator worked physically from Our Lady of Peace Hospital, which is located in Louisville. Our Lady of Peace is operated by KentuckyOne Health.

22.    KentuckyOne Health is the largest and most comprehensive health system in Kentucky. It has more than 200 locations including hospitals, physician groups, clinics, primary care centers, specialty institutes and home health agencies in Kentucky and southern Indiana. Conifer staffs all of KentuckyOne Health's hospitals.

23.    Conifer employed approximately 131 patient advocates and supervisors in Kentucky, of which Relator was one. Patient advocates help to obtain medical insurance coverage

6

for individuals located in Kentucky. As part of their employment, Conifer's patient advocates help individuals apply for Medicaid coverage through the PE program.

24.    Every Conifer patient advocate had to go through extensive training and take a comprehensive test, which was administered by Kynect, before being certified as a "Kynector." Before applying for PE coverage for individuals, each patient advocate had to pass this test. The training and the test clearly outlined eligibility, which demonstrates that Conifer and its employees knew that illegal immigrants were not eligible for coverage through PE.

25.    Beginning in April of 2015, and lasting until approximately October 2016, Conifer, through its patient advocates, submitted applications for hundreds, and possibly thousands, of noneligible individuals for PE Medicaid coverage in Kentucky. These noneligible individuals were illegal immigrants who are not able to apply for, or be provided, PE coverage.

26.    Conifer's policy was that its patient advocates were to submit applications for all income-eligible individuals without insurance coverage even though many of the individuals were illegal immigrants who were not entitled to apply or to be covered.

27.    All of Conifer's patient advocates were expected to enroll every patient, including illegal immigrants, into Kentucky's PE program. Many times, these applications were submitted by patient advocates that had never even spoken or communicated with the individual who coverage was being obtained for. Application and registration forms for PE Medicaid coverage would be given to the patient by the hospital's registration staff, who would then forward those documents to the Medical Eligibility and Counseling (MECS) Department's patient advocates for enrollment through PE.

28.    Patient advocates were instructed to inquire about the individual's citizenship status, although not every advocate did so.

7

29.    On April 14, 2015, Pamela Mills, who was a Supervisor of Medical Eligibility and Counseling Services for Conifer, wrote an email that was distributed to all Kentucky patient advocates indicating that illegal aliens that are residents of Kentucky can receive coverage through PE. Ms. Mills carbon-copied every Conifer Supervisor in Kentucky, as well as the Conifer state Manager, Lee Jacobs, and the Market Director, Angela Kirkland. Ms. Mills worked from KentuckyOne Health's St. Joseph London Hospital. Ms. Mills wrote that "if you have an illegal that is a resident of KY – you can get the presumptive eligibility. Medicaid Services treats them as "emergent care". When you call to get the confirmation number – a "pseudo number" will be assigned and the confirmation number will be given if income is within guidelines. If they need further treatment – they will need to go thru DCBS to get continuation of benefits." As such, Conifer's express policy was to enroll illegal immigrants through the PE application process.

30.    In April of 2015, Relator reached out to his team lead, Darlene Schoenlaub, and his immediate Supervisor, Carmel Quire, and inquired about the legality and ethicality of these enrollments. He was assured that they were both legal and ethical.

31.    In November 2015, Relator reached out to his Manager, Lee Jacobs, and expressed his concerns about the legality and ethics behind these enrollments. Relator was assured that the process was legal and that he was expected to continue enrolling all patients, regardless of immigration status.

32.    Relator also discussed his concerns with Pamela Mills. Ms. Mills was Conifer's driving force for this policy. Ms. Mills told Relator that she spoke with someone in the Kentucky Medicaid office and that person said illegal immigrants could apply for PE Medicaid coverage. The Relator asked Ms. Mills to show him on paper where it was legal to enroll illegal immigrants into the PE system, but she could not.

8

33.    Relator also spoke directly with his Director, Angela Kirkman, regarding this issue. Ms. Kirkman told Relator that it was legal to enroll illegal aliens into the PE system.

34.    Fearing that Conifer's enrollment of illegal immigrants was illegal, Relator followed Conifer's specified process for reported fraud and asked Conifer's Compliance Department Senior Compliance Officer Valerie Whitmer on December 22, 2015 if the practice was legal. Ms. Whitmer did not respond to Relator's inquiry regarding the legality and ethics of the enrollments. Ms. Whitmer stated that a Conifer investigation had been conducted, and that Conifer had "undertaken a thorough review of the relevant regulatory requirements and the current process. We will be making some recommendations as a result of our review, which we will vet with management to ensure successful implementation and ongoing compliance. We anticipate sharing our recommendations with management shortly after the first of the year." The Relator emailed back asking for a detailed response, but never heard from Ms. Whitmer again.

35.    After discussing his concerns with his supervisors, and after having been assured the enrollment of illegal immigrants into the PE program was legal, Relator called the Kentucky Medicaid office in February 2016. Relator spoke with an employee named Janella. Janella told Relator Tammy Davis, the Point of Contact for Kentucky Medicaid, that Ms. Davis stated it was neither legal nor the intent of the PE program to be used to enroll illegal immigrants.

36.    In October 2016, Jami Wood, a Conifer Senior Compliance Officer, wrote to Relator and noted that Relator reported his fraud concerns to Conifer approximately one year earlier. In November of 2016, Relator was contacted by Ms. Wood who stated that the Relator's compliance inquiry was still an open case and had not been resolved. The relator provided all information to Jami Wood, but never heard from her again. In October 2016, Ms. Wood wrote to Relator and noted that Relator reported his fraud concerns approximately one year earlier.

37.    Relator was later told in February 2017 by Jennifer Mason, the Senior Director of Compliance, that she was unaware what the results of that investigation were. Conifer has a clearly outlined compliance documentation system.

A.    **Ineligible Patient, F.T., Received PE Coverage After Conifer Applied for PE Coverage on F.T.'s Behalf**

38.    Although Relator is aware that hundreds, and possibly thousands, of ineligible patients received PE Medicaid coverage as a result of Conifer's fraud, one such specific example was that of patient F.T.

39.    On October 22, 2015, emails between Conifer employees, including Relator, indicated that F.T. was not a United States citizen. F.T. did not have insurance coverage.

40.    Following receipt of that email, Conifer's Tambra Hillerich submitted a PE Medicaid coverage for F.T. on the same day despite her knowledge that F.T. was not a United States citizen.

41.    F.T.'s application, which was submitted by Conifer, was approved.

42.    Upon information and belief, Conifer submitted claims to Medicaid for services it provided to F.T.

43.    Upon information and belief, Conifer's claims that were submitted for the services provided to F.T. were paid by Medicaid. Because F.T. was ineligible for PE coverage, which Conifer had knowledge of, F.T.'s application was fraudulent and Conifer should not have received Medicaid reimbursement.

B.    **Conifer Attempts to Conceal Its Fraudulent Enrollments of Illegal Immigrants by Claiming Individuals' Are Seeking Emergent Care**

10

44.    Relator is aware that Conifer would oftentimes tell its patient advocates to enroll all patients and claim the patient is eligible for PE coverage because the patient has a medical emergency.

45.    In an April 14, 2015 email, Pamela Mills wrote that

> if you have an illegal that is a resident of KY – you can get the presumptive eligibility.  Medicaid Services treats them as "emergent care".  When you call to get the confirmation number – a "pseudo number" will be assigned and the confirmation number will be given if income is within guidelines. If they need further treatment – they will need to go thru DCBS to get continuation of benefits.

46.    Ms. Mills is incorrect that you can enroll illegal immigrants through PE.

47.    After asking Ms. Mills about this policy, Ms. Mills was unable to show any sort of written policy that would allow these types of enrollments.

### C.    Conifer Knowingly Enrolled Individuals Through PE When It Had Knowledge the Individual did not Meet PE's Income Eligibility Requirements

48.    In addition to legal alien status eligibility requirements, people enrolled through PE also needed to meet certain income requirements.

49.    J.W. was enrolled through PE. The patient advocate, Tyler Farley, helped apply and enroll J.W. from his position at the University of Louisville Hospital. In the patient advocate's notes, the notes indicate that J.W.'s household income excluded J.W. from Medicaid coverage. Despite knowing that J.W. was ineligible for Medicaid coverage, Tyler Farley enrolls J.W. through the PE program and the application was approved. As a result of the services provided to J.W., Conifer submitted claims to Medicaid in the amount of $32,638.88. After J.W.'s PE coverage expired, J.W. was admitted to the hospital that Relator worked at. Relator spoke with J.W. and after J.W. revealed its household income, Relator told J.W. he was ineligible for PE.

11

**D.    Conifer Did Not Fully Explain The Applications and PE Process to the Individuals They Were Helping to Apply For, Which Caused the Individuals' Substantial Harm**

50.    Conifer's patient advocates created hardships for some non-citizens by applying for PE Medicaid coverage on their behalf. Conifer's first action for an uninsured patient was to do a PE application. These types of accounts would frequently be fraudulent enrollments because, even if the individual had citizenship documentation, the individual still may not have met the residency requirements to receive PE coverage.

51.    Conifer was aware that non-citizens could be adversely affected if they applied for PE coverage yet chose to enroll these people anyhow. Oftentimes, Conifer's decision to apply and enroll individuals was to the patient's detriment.

52.    On October 28, 2015, Conifer's Darlene Schoenlaub, who was an interim MECS Supervisor at University of Louisville Hospital, wrote an email to patient advocate supervisors that reads:

> We received a call from the ULH [University of Louisville Hospital] financial counselors office regarding non citizens applying for Medicaid. I discussed with Denise Nichols when she was here today and she confirmed. **Some non-citizens that are traveling to this country and have plans of returning to their country sign an agreement that they will not apply for any government programs while they are in the US.** Many countries will reimburse their residents for any medical expenses they incur while in another country. If they apply for Medicaid after they signed the agreement they may have issues returning to their country and/or coming back to the US at a later time. We need to include these questions
> **1. are you planning to travel back to your country,**
> **2. have you signed an agreement stating you will not apply for any government programs,**
> in our screenings to prevent issues. Here at ULH we are getting several patients asking us to cancel the applications because they are having issues with travel. If the family travels to the US and have a baby we could still apply for baby as baby is now a US citizen.

53.     Upon information and belief, despite this knowledge, many patient advocates continued enrolling these people, oftentimes without explaining these effects.

**E.     Conifer Enrolled Individuals Through the PE Program After the Individuals Were Denied Full Coverage**

54.     Relator is aware that at least one Conifer employee would use PE to enroll individuals she knew would not be granted coverage through a regular Medicaid application and/or who had already been denied via the full application. Conifer was aware of this but continued to keep the employee employed.

55.     Upon information and belief, these enrollments were fraudulent.

**F.     Relator Reported His Concerns to the KY OIG Fraud Department**

56.     Although little has been communicated to Relator, Conifer's Compliance Department told Relator in December 2016 that his concerns remain an open issue.

57.     After exhausting all efforts with Conifer's Compliance Department, Relator reported the fraud to the Kentucky Office of the Inspector General Fraud and Abuse Hotline, and spoke directly with Susan Harris, the Assistant Director of the KY OIG on January 30, 2017.

58.     Relator was contacted by his director, Josephine Cole, who insisted that Relator "return and destroy" all evidence that he had in his possession that Relator believe demonstrated Conifer's fraudulent scheme.

59.     After receiving this response, Relator sent an email to CEO Steve Mooney outlining his concerns. Mr. Mooney has not responded to Relator.

## FIRST CLAIM FOR RELIEF

### Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A) and (B)

60.     Whited incorporates by reference each of the preceding paragraphs of this Complaint.

61.     This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, as amended.

62.     By virtue of the acts described above, the Defendants knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, which resulted in potentially countless millions of dollars of payments of false claims by the United States Government and State of Kentucky to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(A).

63.     By virtue of the acts described above, the Defendants also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in potentially millions of dollars of payments of false claims by the United States Government and the State of Kentucky to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(B).

64.     The acts described above induced the United States Government or the State of Kentucky to pay or approve such false or fraudulent claims.

65.     Every such payment by the United States to the Defendants was a product of a false claim and materially false statements made by Defendants.

66.     In reliance on these false representations and claims, the United States Government and the State of Kentucky, by and through their intermediaries, agents, and agencies, paid potentially countless millions of dollars for claims submitted by Defendants that it otherwise would

not have paid had the government been aware of Defendants' knowing violations of the FCA and the various rules and regulations of the Medicaid program.

67.    By reason of Defendants' acts, the United States and the State of Kentucky have been damaged and continue to be damaged in substantial amounts to be determined at trial.

68.    Pursuant to the FCA, the Defendants are liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015.

## SECOND CLAIM FOR RELIEF

### Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)

69.    Relator incorporates by reference each of the preceding paragraphs of this Complaint.

70.    This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, as amended.

71.    By virtue of the acts described above, the Defendants conspired to knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval, which resulted in payments of false claims by the United States Government and State of Kentucky to the Defendants. Such conspiracy is a violation of 31 U.S.C. § 3729(a)(1)(C).

72.    By virtue of the acts described above, the Defendants also conspired to knowingly make, use or cause to be made or used, false records and statements material to a false or fraudulent claim which resulted in payments of false claims by the United States Government and the State of Kentucky to the Defendants. Such conspiracy is a violation of 31 U.S.C. § 3729(a)(1)(C).

73.    Because of the Defendants' acts, the United States and the State of Kentucky have been damaged and continue to be damaged in substantial amounts to be determined at trial.

74.    Pursuant to the FCA, the Defendants are liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015.

## THIRD CLAIM FOR RELIEF

### Violations of 42 U.S.C. § 1320a-7k

75.    Relator incorporates by reference each of the preceding paragraphs of this Complaint.

76.    42 U.S.C. 1320a-7k is known as the "MEDICARE AND MEDICAID PROGRAM INTEGRITY PROVISIONS" in the Social Security Act. Section 1128J(d)(1) of the Social Security Act requires a person who has received an overpayment to report and return the overpayment to the Secretary, the state, an intermediary, a carrier, or a contractor, as appropriate, at the correct address, and to notify the Secretary, state, intermediary, carrier or contractor to whom the overpayment was returned in writing of the reason for the overpayment. Section 1128J(d)(2) of the Act requires that an overpayment be reported and "returned by the later of— (A) the date which is 60 days after the date on which the overpayment was identified; or (B) the date any corresponding cost report is due, if applicable." Section 1128J(d)(3) of the Act specifies that "any overpayment retained by a person after the deadline for reporting and returning an overpayment is an obligation (as defined in 31 U.S.C. 3729(b)(3)) . . . for purposes of 31 U.S.C. 3729."

16

77.     Pursuant to 42 U.S.C. 1320a-7k(4)(B) "the term "overpayment" means any funds that a person receives or retains under subchapter XVIII or XIX to which the person, after applicable reconciliation, is not entitled under such subchapter." Defendants have received funds pursuant to subchapter XIX.

78.     The Defendants are each to be considered a "person" under 42 U.S.C. 1320a-7k(d)(4)(C).

79.     Pursuant to 42 U.S.C. 1320a-7k, the Defendants' retention of funds received through the fraudulent scheme described above constitute overpayments that it was required to reimburse.

80.     The Defendants have not reimbursed the government the funds that they were overpaid with.

81.     The Defendants' actions therefore create a liability under the False Claims Act.

82.     Pursuant to the FCA, the Defendants are liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted prior to November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted on or after November 2, 2015.

## FOURTH CLAIM FOR RELIEF

### Fraud

83.     Relator realleges and incorporates by reference the allegations made in this Complaint.

84.    Through the acts described above, Defendants made misrepresentations and omissions of material fact concerning individuals' eligibility for PE Medicaid coverage in Kentucky.

85.    Defendants made these misrepresentations and omissions of material fact with knowledge of their falsity and/or with reckless disregard for their truth.

86.    Defendants made these misrepresentations and omissions of material fact intending that United States and the State of Kentucky, directly or indirectly, would rely on their accuracy in providing coverage to the individuals. When the coverage was obtained, this allowed Defendants to submit claims to Medicaid for services provided to the individuals.

87.    Both the United States and the State of Kentucky justifiably relied on these misrepresentations and omissions of material fact to their detriment.

88.    As a result of Defendants' wrongful conduct, the United States and the State of Kentucky have suffered damages in an amount to be determined at trial.

89.    In addition to compensatory damages, given Defendants' bad faith and/or malicious, willful, reckless, wanton, or fraudulent conduct, both the United States and the State of Kentucky are entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, the United States of America, through Travis Whited, request the Court for entry of judgment against Defendants and the following relief:

A.    That Defendants cease and desist from further violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the related Medicaid medical programs' requirements;

B.       That the Court enter judgment against the Defendants in an amount equal to three

times the amount of damages suffered by the United States because of Defendants'

actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for

each of the false or fraudulent claims herein submitted prior to November 2, 2015

and a civil penalty of not less than $10,781 and not more than $21,563 for each

false or fraudulent claim submitted on or after November 2, 2015;

C.       That Relator be awarded the maximum amount allowed pursuant to section 3730(d)

of the False Claims Act;

D.       That Relator be awarded all costs of this action, including attorneys' fees, costs and

expenses pursuant to 31 U.S.C. § 3730(d); and

E.       That the United States and Relator be granted such further relief as the court deems

equitable, just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a jury trial is demanded.

Respectfully submitted on this 6th day of April, 2017.

MAHANY LAW and WALTERS MEADOWS
RICHARDSON, PLLC

By: _____

Gregory M. Funfsinn
*Member, Western District of Kentucky Bar*
Walters Meadows Richardson, PLLC
771 Corporate Drive, Suite 900
Lexington, Kentucky 40503
P:  (859) 219-9090
F:  (859) 219-9292
Email:  Greg@WMRDefense.com

AND

Brian H. Mahany
*Pro hac vice* forthcoming
Mahany Law
P.O. Box 511328
Wauwatosa, Wisconsin 53203
P: (414) 258-2375
F: (414) 777-0776
Email: brian@mahanylaw.com

Attorneys for Plaintiff-Relator